## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CLIFFORD THOMAS BOLES,

        Plaintiff,

v.

TURN KEY HEALTH CLINICS, L.L.C.,
a domestic limited liability company;
VICKI LYNN DALTON, individually;
BRYAN PATINO, individually;
RILEY BREEDLOVE, individually; and
ALFRED COACHMAN,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 21-cv-00303-GKF-SH

---

## DEFENDANT TURN KEY HEALTH CLINICS, LLC'S
## MOTION TO DISMISS WITH PREJUDICE AND BRIEF IN SUPPORT

---

Respectfully submitted,

**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**W. Caleb Jones**, OBA #33541
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 S. Boston Ave.
Tulsa, OK 74103

**ATTORNEYS FOR DEFENDANT,**
**TURN KEY HEALTH CLINICS, LLC**

**July 29, 2021**

TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................................1

**RELEVANT ALLEGATIONS** ..........................................................................................1

**ARGUMENT AND AUTHORITIES**................................................................................3

      I.     DISMISSAL STANDARD..........................................................................................3

      II.    PLAINTIFF HAS FAILED TO STATE A PLAUSIBLE § 1983 CAUSE OF ACTION
           AGAINST TURN KEY..........................................................................................4

            A.  Turn Key is not subject to *respondeat superior* liability. ...................................4

            B.  Deliberate Indifference Standards....................................................................5

            C.  Counts II and III of Plaintiff's Petition assert invalid theories of
                recovery, and should be dismissed....................................................................6

            D.  The Petition Fails to State a plausible claim under a Monell theory
                of liability..........................................................................................................8

      III.   TURN KEY IS IMMUNE FROM LIABILITY FOR INTENTIONAL INFLICTION OF
           EMOTIONAL DISTRESS UNDER THE OKLAHOMA GOVERNMENTAL TORT
           CLAIMS ACT. ........................................................................................................11

      IV.   PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IS
           BARRED FOR FAILURE TO COMPLY WITH THE NOTICE PROVISIONS OF THE
           OGTCA...............................................................................................................13

**CONCLUSION** ..................................................................................................................14

## TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.,*
 521 F.3d 1278 (10th Cir. 2008) ......................................................................................3

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)........................................................................................................3

*Barrie v. Grand County, Utah,*
 119 F.3d 862 (10th Cir. 1997) ........................................................................................6

*Barrios v. Haskell Cnty., Pub. Facilities Auth.,*
 432 P.3d 233 (Okla. 2018)................................................................................12, 13, 14

*Bell Atlantic v. Twombly,*
 550 U.S. 544 (2007)........................................................................................................3

*Bd. of Cnty. Comm'rs of Bryan Cnty. Oklahoma v. Brown,*
 520 U.S. 397 (1997)......................................................................................................11

*Brammer-Hoelter v. Twin Peaks Charter Academy,*
 602 F.3d 1175 (10th Cir. 2010) ......................................................................................9

*Brashear v. Tulsa Cty. Bd. of Cty. Comm'rs,*
 No. 15-CV-473-GKF-PJC, 2016 WL 633374 (N.D. Okla. Feb. 17, 2016)....................10

*Bryson v. City of Oklahoma City*
 627 F.3d 784 (10th Cir. 2010) ...................................................................................4, 9

*Burke v. Regalado,*
 935 F.3d 960 (2019)....................................................................................................5, 8

*Callahan v. Poppell,*
 471 F.3d 1155 (10th Cir. 2006) ......................................................................................5

*Dubbs v. Head Start, Inc.,*
 336 F.3d 1194 (10th Cir. 2003) .............................................................................1, 4, 7

*Estelle v. Gamble,*
 429 U.S. 97 (1976)......................................................................................................5, 6

*Farmer v. Brennan,*
 511 U.S. 825 (1994)....................................................................................................5, 8

*Fields v. City of Tulsa,*
   753 F.3d 1000 (10th Cir. 2014) ...................................................................13

*Full Life Hospice, LLC v. Sebelius,*
   709 F.3d 1012 (10th Cir. 2013) ..................................................................13

*Gruenwald v. Maddox,*
   274 Fed. Appx. 667 (10th Cir. 2008).............................................................7

*Hall v. GEO Group, Inc.,*
   324 P.3d 399 (Okla. 2014).........................................................................14

*Hernandez v. Correct Care Sols., LLC,*
   2019 U.S. Dist. LEXIS 152339 (D. Colo. July 21, 2019) ...................................6

*Hinton v. City of Elwood,*
   997 F.2d 774 (10th Cir. 1993) ....................................................................9

*Lee v. Turn Key Health Clinics, LLC,*
   2020 U.S. Dist. LEXIS 33615 (N.D. Okla. Feb. 27, 2020) ..........................12, 14

*Lopez v. City of Tulsa,*
   No. 09-CV-757-TCK-FHM, 2010 WL 3825395 (N.D. Okla. Sept. 27, 2010)..................10

*Lopez v. LeMaster,*
   172 F.3d 756 (10th Cir. 1999) .................................................................5, 11

*Mata v. Saiz,*
   427 F.3d 745 (10th Cir. 2005) ..................................................................5, 6

*Mick v. Brewer,*
   76 F.3d 1127 (10th Cir. 1996) ....................................................................7

*Monell v. Dept. of Social Servs. of City of New York,*
   436 U.S. 658 (1978)......................................................................... Passim

*Moya v. Garcia,*
   2017 U.S. Dist. LEXIS 20951 (D.N.M. Feb. 13, 2017),
   *aff'd* 887 F.3d 1161 (10th Cir. 2018)...........................................................9

*Oklahoma City v. Tuttle,*
   471 U.S. 808 (1985).................................................................................5

*Olsen v. Layton Hills Mall,*
   312 F.3d 1304 (10th Cir. 2002) ...................................................................8

*Oxendine v. Kaplan,*
    241 F.3d 1272 (10th Cir. 2001) ...........................................................................5

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986)...........................................................................................4

*Prince v. Turn Key Health Clinics, LLC,*
    2019 U.S. Dist. LEXIS 7716 (N.D. Okla. Jan. 16, 2019)................................13

*Ramos v. Lamm,*
    639 F.2d 559 (10th Cir. 1980) ...........................................................................6

*Randall v. Bd. of Cnty. Comm'rs,*
    184 Fed. Appx 723 (10th Cir. 2006).................................................................6

*Robbins v. Oklahoma,*
    519 F.3d 1242 (10th Cir. 2008) ..........................................................................3

*Self v. Crum,*
    439 F.3d 1227 (10th Cir. 2006) ..........................................................................6

*Simmons v. Uintah Health Care Special Serv. Dist.,*
    506 F.3d 1281 (10th Cir. 2007) ......................................................................4, 7

## **Constitutional Provisions**

U. S. Const. amend. VIII...........................................................................................6

## **Statutes**

42 U.S.C. § 1983.......................................................................................... Passim
51 *Okla. Stat.* § 151....................................................................................... Passim
51 *Okla. Stat.* §152........................................................................................ Passim
51 *Okla. Stat.* §153........................................................................................ Passim
51 *Okla. Stat.* § 155....................................................................................... Passim
51 *Okla. Stat.* § 156....................................................................................... Passim
51 *Okla. Stat.* § 157....................................................................................... Passim

## **Court Rules**

10th Cir. R. 32.1.......................................................................................................6
Fed. R. Civ. P. 8.......................................................................................................3
Rule 11(b)(3).............................................................................................................2
Rule 12(b)(6).............................................................................................................3

Defendant, Turn Key Health Clinics, LLC ("Turn Key" or "Defendant"), respectfully moves to dismiss, with prejudice, the Petition (Doc. #2-1) filed by Plaintiff, Clifford Thomas Boles ("Boles" or "Plaintiff").

## INTRODUCTION

Plaintiff asserts four claims against Turn Key: (i) "42 U.S.C. §1983—Medical Indifference"; (ii) "1983—Failure to Intervene"; (iii) "1983 *Monell* Claim—Official Liability"; and (iv) Intentional Infliction of Emotional Distress. Turn Key can only be held liable under § 1983 on a municipal liability theory. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). This alone mandates dismissal of Plaintiff's first and second claims against Turn Key— the "medical indifference" and "failure to intervene" counts. Concerning *Monell* liability, Plaintiff's allegations with respect to Turn Key are conclusory and fall far short of plausibly asserting a viable claim under *Monell*. (Dkt. 2-1, ¶¶27-28).

Plaintiff also asserts a state law tort claim for intentional infliction of emotional distress. Plaintiff's cursory allegations against Nurse Dalton and Turn Key do not plausibly assert a claim for intentional infliction of emotional distress. Additionally, Plaintiff's claim is barred under the OGTCA, as Plaintiff has made no attempt to comply with the OGTCA's notice provisions. Plaintiff's claim must be dismissed.

## RELEVANT ALLEGATIONS

The factual allegations of the Petition, taken as true, state that Plaintiff was arrested and incarcerated at the Tulsa County Jail on January 25, 2020, and that he had a preexisting bacterial infection in his finger at that time. (Dkt. #2-1, ¶¶ 8-9). Plaintiff informed Tulsa County Jail and Turn Key employees of his medical needs, and he was denied medical care. (Dkt. # 2-1, ¶¶ 8-9). In order to obtain care for his finger, Plaintiff laid on the floor of the jail. (Dkt. # 2-1, ¶ 9). Plaintiff

1

was told to get off of the floor, and, when he refused, the three detention officer Defendants held

Plaintiff down and stunned him four to five times. (Dkt. # 2-1, ¶ 9).

Plaintiff was placed in a cell, and Nurse Dalton arrived to assess his injuries from the prior

use of force. (Dkt. # 2-1, ¶ 10). According to the Petition, Nurse Dalton did not prescribe any pain

medicine and did not notify qualified medical professionals to render appropriate care for Plaintiff.

(Dkt. # 2-1, ¶ 10). Plaintiff was not provided pain medicine for approximately 1 week. (Dkt. # 2-

1, ¶ 10).[1]

In Plaintiff's recounting of his causes of action, Plaintiff includes the conclusory allegation

that "all Defendants were aware of Plaintiff's need for medical care and ignored his needs" (Dkt.

#2-1, ¶ 25), and that "Defendants failed to intervene to known unconstitutional conduct that

occurred upon Plaintiff." (Dkt. #2-1, ¶ 26). Plaintiff further alleges, in an attempt to assert a *Monell*

liability claim against Defendant Turn Key, as follows:

> That an unconstitutional policy existed wherein inmates were discouraged from
> seeking necessary medical care, that Turn Key staff refused to allow the inmates
> access to necessary health care and the medical needs of the inmates were ignored.
> That official and municipal liability exists as to Turn Key based on the unlawful
> policy of Turn Key and the failure to train and deficient hiring practices.

(Dkt. #2-1, ¶ 27).

---

[1] Though this Court must accept as true all well-pleaded allegations in the Petition, Defendant
would note that the allegations concerning Plaintiff's medical treatment are directly contradicted
by Plaintiff's medical records. Defendant has informed Plaintiff's counsel of the inaccurate
allegations and provided counsel with Mr. Boles' medical records. Additionally, Defendant has
requested that the allegations be dismissed or amended by Plaintiff's counsel, pursuant to Rule
11(b)(3).

## ARGUMENT AND AUTHORITIES

### I.    DISMISSAL STANDARD.

In considering a motion under Rule 12(b)(6), the Court must accept Plaintiff's well-pleaded allegations as true. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). To survive a motion to dismiss, Plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 569). Plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" that he is entitled to relief. *Twombly*, 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

Determining whether a complaint states a plausible claim is "context specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]' that the pleader is entitled to relief." *Id.* (citing FED. R. CIV. P. 8(a)(2)).

3

## II.   PLAINTIFF HAS FAILED TO STATE A PLAUSIBLE §1983 CAUSE OF ACTION AGAINST TURN KEY.

### A.   Turn Key is not subject to *respondeat superior* liability.

It is well-established that there is no *respondeat superior* or vicarious liability under §

1983. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978) ("[W]e

conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor - - or, in

other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.")

(emphasis by the Court). The Tenth Circuit "has extended the *Monell* doctrine to private § 1983

defendants." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). Accordingly, Turn

Key cannot be held liable as a result of the actions or omissions of its employees.

To be liable, Turn Key must have had an official policy, practice or custom that was the

"direct cause" or "moving force" behind the alleged constitutional deprivation. *See Dubbs*, 336

F.3d at 1215; *see also Bryson v. City of Oklahoma City,* 627 F.3d 784, 788 (10th Cir. 2010) ("[A]

plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct

causal link between the policy or custom and the injury alleged."). "The 'official policy'

requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the

municipality, and thereby make clear that municipal liability is limited to action for which the

municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)

(emphasis by the Court). "When employees take actions specifically authorized by policy or

custom, their actions can be fairly said to be the municipality's. But when they act inconsistently

with official policy or custom, though perhaps even still within the scope of employment, that will

not suffice." *Simmons v. Uintah Health Care Special Serv. Dist.*, 506 F.3d 1281, 1284 (10th Cir.

2007). It is not sufficient to merely identify a harm and allege it was the result of a policy or

custom. "[S]ome limitation must be placed on establishing municipal liability through policies that

are not themselves unconstitutional, or the test set out in *Monell* will become a dead letter. Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm. . . ." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

### B. Deliberate Indifference Standards.

The Tenth Circuit Court of Appeals has "recognize[d] at the outset that neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners. They are, however, responsible for taking reasonable measures to insure the safety of inmates." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) (internal citation omitted). "[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104, (1976). "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id.* at 105-06.

The deliberate indifference standard has objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is satisfied if the "harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective component "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

"To satisfy the subjective component, the plaintiff must show the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Burke*, 935 F.3d 960, 992 (10th Cir. 2019) (quoting *Farmer*, 511 U.S. at 837). The official "must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quotations omitted).

"This is a difficult standard to meet, as '[d]eliberate indifference[]' . . . require[es] a higher degree of fault than negligence, or even gross negligence." *Randall v. Bd. of Cnty. Comm'rs*, 184 Fed. Appx. 723, 726 (10th Cir. 2006)[2] (quoting *Barrie v. Grand County, Utah*, 119 F.3d 862, 869 (10th Cir. 1997)); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata*, 427 F.3d at 751. A medical professional's "accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

### C. Counts II and III of Plaintiff's Petition assert invalid theories of recovery, and should be dismissed.

It is fundamental under § 1983 jurisprudence that Turn Key, as a private correctional healthcare provider, cannot be liable for the actions or omissions of its employees. There is no vicarious liability under § 1983. *See Monell*, 436 U.S. at 694. Accordingly, to establish liability against Turn Key, Plaintiff must proceed on a theory of municipal liability. *See id.*; *see also Hernandez v. Correct Care Sols., LLC*, 2019 U.S. Dist. LEXIS 152339, *30 (D. Colo. July 21, 2019) ("A business entity working on the government's behalf can only be liable through the municipal liability framework established by the Supreme Court in *Monell*. . . ."). Municipal

---

[2]All unpublished cases from the Tenth Circuit Court of Appeals are cited for their persuasive value only in accordance with 10th Cir. R. 32.1.

liability may be established in one of two ways. First, by establishing that the defendant promulgated an official policy, practice or custom that was the "direct cause" or "moving force" behind the alleged constitutional deprivation. *See Dubbs*, 336 F.3d at 1215. Second, by establishing that the municipality's final policymaking authority took an unconstitutional act. *Simmons*, 506 F.3d at 1285 (A "municipality is responsible for *both* actions taken by subordinate employees in conformance with preexisting official policies or customs *and* actions taken by final policymakers, whose conduct can be no less described as the 'official policy' of a municipality.").

Plaintiff asserts a claim for "medical indifference" against all defendants under § 1983 (Doc. #2-1, ¶24-25 (Claim II)). However, Plaintiff does not assert the § 1983 claim against Turn Key on a theory of municipal liability. Plaintiff alleges only that "all Defendants were aware of Plaintiff's need for medical care and ignored his needs and the resulting failure resulted in significant damages to Plaintiff." (Dkt. #2-1, ¶25). None of the preceding allegations allege that Turn Key had a policy, practice, or custom leading to Plaintiff's injury. Plaintiff's claim for "medical indifference" is an attempt to impose vicarious liability upon Turn Key, and Count two should be dismissed accordingly.

Plaintiff's third Count alleges "1983-failure to intervene" against all Defendants. Here too, Plaintiff fails to allege any policy, practice, or custom that could serve as a basis for municipal liability against Turn Key. (Dkt. #2-1, ¶26). Moreover, even if Plaintiff should attempt to assert some policy basis for this claim, there is no precedent for allowing such a claim to be asserted against a medical care provider, rather than a law enforcement officer. *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) ("[A] **law enforcement official** who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983."); *see also, Gruenwald v. Maddox*, 274 Fed. Appx. 667, 674 (10th Cir. 2008) ("**an officer** who is present at

7

the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.") (emphasis added). Count three should be dismissed as to Defendant Turn Key.

### D. The Petition Fails to State a plausible claim under a *Monell* theory of liability.

Count four of Plaintiff's Petition attempts to assert a *Monell* claim against Defendant Turn Key. (*See* Doc. #2-1, ¶ 27-29). Plaintiff fails to plead sufficient facts to state a claim.

As an initial matter, there can be no municipal liability "when there was no underlying constitutional violation by any of its officers." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) (internal quotation omitted). Plaintiff's Petition names only one Turn Key employee, Vicki Dalton, and does not contain sufficient allegations against Nurse Dalton to plausibly allege deliberate indifference. Plaintiff's allegations against Nurse Dalton are confined to paragraph 10 of his Petition, in which he alleges as follows:

> Dalton arrived at the cell to observe Plaintiff, not for his finger but to clear Plaintiff from any injuries from the excessive force imposed on him. Dalton arrived over 4 hours later while Plaintiff was still in excruciating pain for his finger. Dalton, according to reports of the jail defendants, cleared him. Dalton did not prescribe any pain medicine nor did she cause pain medicine to be issued to Plaintiff and did not notify the qualified medical professionals to render appropriate care for Plaintiff. Plaintiff was not provided pain medicine for his finger for approximately 1 week.

(Dkt. #2-1, ¶ 10). The subjective component of the deliberate indifference standard requires that the defendant 'knows of and disregards an excessive risk to inmate health or safety.'" *Burke*, 935 F.3d at 992 (quoting *Farmer*, 511 U.S. at 837). Nowhere within Plaintiff's allegations against Nurse Dalton does he allege that he informed Nurse Dalton of his infected finger or that Nurse Dalton was otherwise aware, or should have been aware, of his infected finger. Even accepting Plaintiff's allegations as true, Nurse Dalton's alleged inaction does not rise to deliberate indifference absent some allegation that Nurse Dalton was aware of Plaintiff's condition.

8

Plaintiff cursorily alleges that he "notified…employees of Turn Key of the need for medical care." (Dkt. #2-1, ¶ 8). However, such vague, generalized allegations do not suffice to show deliberate indifference on the part of Nurse Dalton—it is Nurse Dalton's specific knowledge of Plaintiff's medical condition that is relevant, not an unspecified "employee" of Turn Key. *See, Moya v. Garcia*, 2017 U.S. Dist. LEXIS 20951, *35 (D.N.M. Feb. 13, 2017), *aff'd*, 887 F.3d 1161 (10th Cir. 2018) ("Plaintiffs' Complaint improperly lump[s] the Defendants together without specifying who did what to whom.") Plaintiff has not sufficiently alleged a constitutional violation on the part of Nurse Dalton, and his *Monell* claim against Turn Key should be dismissed.

Even if Plaintiff has sufficiently pled a constitutional deprivation as the result of Nurse Dalton's alleged inaction, to establish municipal liability under § 1983, a plaintiff must also show "1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Bryso*n, 627 F.3d at 788 (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). Accordingly, it is insufficient for a Plaintiff to allege the existence of a municipal policy or custom without also presenting facts, taken as true, that the policy or custom was the direct cause of the alleged injury. A municipal policy or custom may take the following forms:

> (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Id.* (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

9

Plaintiff's sole allegations regarding Turn Key's supposedly unconstitutional policies are as follows:

> That an unconstitutional policy existed wherein inmates were discouraged from seeking necessary medical care, that Turn Key staff refused to allow the inmates access to necessary health care and the medical needs of the inmates were ignored. That official and municipal liability exists as to Turn Key based on the unlawful policy of Turn Key and the failure to train and deficient hiring practices.

(Dkt. #2-1, ¶ 27). Plaintiff also makes the conclusory allegation that, "The unconstitutional policy stated herein created the unlawful conduct upon Plaintiff." (Dkt. #2-1, ¶ 28). Plaintiff fails to present sufficient facts actually demonstrating a direct causal link between the alleged policies, practices and customs and Mr. Boles' injury.

Plaintiff first alleges, "that an unconstitutional policy existed wherein inmates were discouraged from seeking necessary medical care." (Dkt. #2-1, ¶ 27). However, Plaintiff nowhere alleges that Turn Key or any of its employees "discouraged" him from seeking medical care, and, indeed, Plaintiff alleges that he did seek medical care. (Dkt. #2-1, ¶ 10). There are no factual allegations demonstrating a causal nexus between this alleged policy and Plaintiff's alleged injury.

Plaintiff next alleges "that Turn Key staff refused to allow the inmates access to necessary health care and the medical needs of the inmates were ignored." (Dkt. #2-1, ¶ 27). It is unclear whether this allegation actually constitutes an allegation of an unconstitutional policy, as opposed to just another cursory factual allegation. Even considering this to be a policy allegation, however, it is generalized and conclusory; this Court has routinely found such allegations of generalized deficiencies relating to all aspects of medical care to be too conclusory to state a plausible § 1983 municipal liability claim. *See Brashear v. Tulsa Cty. Bd. of Cty. Comm'rs*, No. 15-CV-473-GKF-PJC, 2016 WL 633374, at *3 (N.D. Okla. Feb. 17, 2016); *Lopez v. City of Tulsa*, No. 09-CV-757-TCK-FHM, 2010 WL 3825395, at *6 (N.D. Okla. Sept. 27, 2010).

10

Lastly, Plaintiff makes the—again, entirely conclusory—allegation of "failure to train" and "deficient hiring practices" on the part of Turn Key. (Dkt. #2-1, ¶ 27). With respect to undertraining, to prevail, Plaintiff must "identify a specific deficiency" in the training "closely related to [the] ultimate injury." *Lopez*, 172 F.3d at 760. Plaintiff has utterly failed to identify any specific training deficiency and how this deficiency caused his alleged injury.

Cursory allegations of "deficient hiring practices" are also subject to dismissal. *See Bd. of Cnty. Comm'rs of Bryan Cnty, Oklahoma v. Brown*, 520 U.S. 397 (1997) (holding that a sheriff's isolated failure to perform adequate screening of a deputy did not establish deliberate indifference). Plaintiff's Petition does not even clarify which hiring practices of Turn Key were allegedly deficient; Plaintiff never alleges, for instance, that Nurse Dalton was unqualified for her position or that Turn Key did not adequately screen Nurse Dalton prior to hiring her. Plaintiff does not allege any specific facts showing that the alleged training or hiring deficiency was the direct cause of Boles' injury.

Plaintiff fails to present any specific policies, practices and/or customs of Turn Key. Nor does Plaintiff allege facts, taken as true, establishing that any policy, practice and/or custom was the moving force behind Boles's injury. The foregoing are precisely the kind of conclusory assertions, devoid of sufficient factual enhancement, that this Court has routinely found to be insufficient to state a plausible claim under § 1983.

### III. TURN KEY IS IMMUNE FROM LIABILITY FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT.

Plaintiff's state law tort claim for Intentional Infliction of Emotional Distress is barred by the immunity afforded under the OGTCA, 51 *Okla. Stat.* §§ 151, *et seq.* The OGTCA provides that the "state or a political subdivision shall not be liable if a loss or claim results from" the

11

"[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility. . . ." 51 *Okla. Stat.* § 155 and § 155(25). The "state" and "political subdivisions" afforded immunity include their employees, defined as "any person who is authorized to act in behalf of a political subdivision or the state. . . ." 51 *Okla. Stat.* § 152(7). Employees include "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies. . . ." 51 *Okla. Stat.* § 152(7)(b)(7).

This Court has consistently dismissed, with prejudice, state tort claims against private correctional healthcare providers, including Turn Key, as a result of the Oklahoma Supreme Court's 2018 decision in *Barrios v. Haskell Cnty., Pub. Facilities Auth.*, 432 P.3d 233 (Okla. 2018). In *Barrios*, on a certified question from this Court, the Oklahoma Supreme Court noted that "[g]enerally speaking, the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA by virtue of sections 152(7)(b), 153(A), and 155(25)." *Id.* at 236, n.5. The Oklahoma Supreme Court concluded that "[w]e have not been asked whether Turn Key Health, LLC or its staff are 'employees' under section 152(7)(b) but have assumed that they are for purposes of answering the questions certified to us." *Id.*

This Court has consistently interpreted *Barrios* to afford private correctional healthcare providers immunity under the OGTCA and has applied *Barrios* to dismiss state tort claims against such entities. As recently as February of this year, this Court noted that it "has previously held that a private entity that contracted with the State to provide healthcare services was immune from tort liability under the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, §§ 151 *et seq*, as an 'employee.'" *Lee v. Turn Key Health Clinics, LLC*, 2020 U.S. Dist. LEXIS 33615, *24 (N.D. Okla. Feb. 27, 2020). "The court sees no reason to depart from its prior reasoning and, therefore dismisses plaintiff's negligence

12

claim against Turn Key with prejudice." *Id.* at *25 (citing *Barrios*, 432 P.3d at 236, n.5); *see also Prince v. Turn Key Health Clinics, LLC*, 2019 U.S. Dist. LEXIS 7716, *26 (N.D. Okla. Jan. 16, 2019) (Relying on *Barrios*, the "Court finds that Turn Key is an 'employee' under the OGTCA and, therefore, is immune from tort liability.").

Plaintiff's intentional infliction of emotional distress claim under Oklahoma law is no different from the claims this Court has dismissed with prejudice time and time again. The OGTCA immunizes Turn Key from liability arising from its provision of services and medical care to inmates and detainees at the Tulsa County Jail. *See* 51 *Okla. Stat.* §§ 152, 155. Plaintiff's claim should be dismissed with prejudice because any amendment would be futile. *See Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.") (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013)). Plaintiff's intentional infliction of emotional distress claim fails because it is not a viable legal theory, not because Plaintiff failed to plead sufficient facts. No amendment would change the fact the claim is absolutely barred under the OGTCA.

## IV. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IS BARRED FOR FAILURE TO COMPLY WITH THE NOTICE PROVISIONS OF THE OGTCA.

The OGTCA requires a plaintiff, or a decedent's representative, to file a notice of tort claim as a prerequisite to initiating suit. The OGTCA provides that "[a]ny person having a claim against the state or a political subdivision. . . shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages." 51 *Okla. Stat.* § 156(A). "A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part." 51 *Okla. Stat.* § 157(A). "No action for any cause arising under this act, Section 151 et seq. of this title, shall be maintained unless valid notice has been given . . . ." 51 *Okla. Stat.* § 157(B). The Oklahoma Supreme Court has held that "[c]ompliance with the statutory notice

provisions of the GTCA is a jurisdictional requirement to be completed prior to the filing of any pleadings." *Hall v. GEO Group, Inc.*, 324 P.3d 399, 404 (Okla. 2014). Plaintiff bears the burden to demonstrate compliance with the notice provision of the OGTCA. *Id.* ("The record before us does not show that Hall has complied with the notice provisions of the GTCA, nor does he allege that he has complied.").

The OGTCA applies to state tort claims asserted against private correctional healthcare providers such as Turn Key. In *Hall v. GEO Group, Inc.*, the Oklahoma Supreme Court held that the notice requirement of the OGTCA, 51 *Okla. Stat.* § 156, applied to claims brought by inmates or former inmates against private correctional facilities. *Hall*, 324 P.3d at 404-05. This Court has recognized that the OGTCA applies to private correctional healthcare providers, such as Turn Key, with respect to immunity in light of the Oklahoma Supreme Court's decision in *Barrios*. *See* Section III, *supra*. This is because private correctional healthcare providers are considered "employees" subject to the OGTCA. *See Lee*, 2020 U.S. Dist. LEXIS at *24 (N.D. Okla. Feb. 27, 2020) (holding Turn Key is an "employee" under the OGTCA.). If Turn Key is considered an employee of the State or a political subdivision for purposes of the OGTCA, then it follows that the OGTCA's notice requirement is a prerequisite to suit against Turn Key. Plaintiff's Petition contains no allegation that he properly notified Turn Key of his state law tort claim, as is required under the OGTCA, and Plaintiff's claim for intentional infliction of emotional distress should be dismissed.

## CONCLUSION

Defendant Turn Key Health Clinics, LLC respectfully moves the Court to dismiss all of Plaintiff's claims against Turn Key. Turn Key may only be held liable for its own actions in promulgating an official policy or custom that was the moving force behind Boles' injury; Turn Key cannot be held vicariously liable for the actions of its employees. Only one of Plaintiff's three

§1983 claims against Turn Key even attempts to assert a *Monell* theory of liability; Plaintiff's first and second claims against Turn Key—for "medical indifference" and "failure to intervene" respectively—should be dismissed accordingly. Plaintiff's attempt to assert a *Monell* theory of liability fairs no better; Plaintiff's petition is devoid of any facts that would establish a plausible §1983 claim. Plaintiff's bare legal conclusions do not suffice.

Plaintiff's state law tort claim for intentional infliction of emotional distress is barred, and Turn Key is immune from any liability, pursuant to the OGTCA. The OGTCA acts as an absolute legal bar to Plaintiff's state tort law claims that is not dependent on the facts pleaded, and thus not subject to amendment. Plaintiff's state law tort claim is equally barred for failure to comply with the mandatory notice provisions of the OGTCA.

For the reasons set forth herein, Defendant Turn Key Health Clinics, LLC respectfully requests that the Court dismiss the claims asserted against it.

Respectfully submitted,

/s/ Jo Lynn Jeter
**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**W. Caleb Jones**, OBA #33541
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 S. Boston Ave.
Tulsa, OK  74103
Telephone:  (918) 583-7571
Facsimile:  (918) 584-7846

**ATTORNEYS FOR DEFENDANT,
TURN KEY HEALTH CLINICS, LLC**

15

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Brendan M. McHugh
Dana Jim

/s/ Jo Lynn Jeter
**Jo Lynn Jeter**

16